**Elward BAKER, also known as Jimmy Butler, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15762.**

United States Court of Appeals Ninth Circuit.

May 6, 1958.

Robert E. Benton, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., T. Conrad Judd, Lloyd F. Dunn, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE, CHAMBERS and BARNES, Circuit Judges.

CHAMBERS, Circuit Judge.

Baker has been found guilty of the count that on or about April 1, 1957, he "did knowingly transport a woman, namely: Sally * * *, in interstate commerce, namely: from Las Vegas, Nevada, to Los Angeles, California, * * * for prostitution, debauchery and other immoral purposes."

Simultaneously, the counts being inconsistent, the jury acquitted Baker on a count charging him with, on the same date for the same purposes, transporting Sally from Phoenix, Arizona, to Los Angeles, California. Involved was the Mann Act. See 18 U.S.C.A. § 2421.

Witnesses were produced by the government. The government's case may be summarized:

■ 1. After Sally became intimately acquainted with Baker at Phoenix in late December, 1956, he, for some three months, had been sporadically taking her to labor camps near Phoenix, where with the meanest of surrounding appointments she had sold herself for a price to the field laborers seriatim, the price going always to Baker. (This was not commerce among states, so there was no federal crime yet. But this pattern was admissible as bearing on Baker's later intent in taking Sally across the California line.)

2. About March 30, 1957, law officers at Phoenix were "floating" Baker out of town and out of the state. Baker was in a friend's car driven by the friend. This car was followed by an escort of officers. While Baker was making his forced exodus from Phoenix, another officer who had been keeping Baker and Sally under surveillance, apparently for narcotics activity, dropped back to the apartment or room where Sally and Baker had been living for some time. Sally was there with her meagre belongings packed, ready to travel. Seeing the situation, the officer went to his car and radioed the escort car west of Phoenix to bring Baker back and get Sally. (This was done at her behest or with her consent. Further,

it was agreeable to Baker.) So the short entourage returned to Phoenix, Baker picked up Sally and the westward journey was resumed. The officers turned back short of the state line.

3. The weakest link in the government's proof is whether Sally and Baker first went to Las Vegas in Nevada before proceeding to Los Angeles where they appeared April 3, 1957. Jurymen could have thought that there was only one trip to Las Vegas. Earlier in February the two had made a trip from Phoenix to Las Vegas and return. But there was adequate evidence that Baker and Sally on their second trip did stop for a few days in Las Vegas before proceeding to Los Angeles in the early days of April—if the jurymen wanted to believe it. They did.

4. In South Los Angeles, the defendant, living with Sally, was active in solicitation of customers for her, as well as sending her out on the streets to solicit alone—all for his financial gain.

5. The inducement to Sally, she said, was that the defendant was supplying her with narcotics, for which she had acquired a habit.

On appeal, defendant-appellant principally attacks on the ground that Baker and Sally were driven (forced out) of Arizona; that this compulsion is inconsistent with the required intent under the Mann Act.

■ The problem would require more serious thought if the jury had not acquitted him of directly transporting the defendant from Arizona to California, but even then with Sally packed ready to go, wanting to go, and Baker wanting to come back after her, there is not too much doubt that the jury was not precluded from returning a guilty verdict on that count—if they had thought the trip was actually across the Arizona-California line. Evidently the jury thought that after the journey was broken at Las Vegas a new purpose to go to California arose. Thus, the problem defendant poses answers itself. Assume the Arizona officers escorted Baker and Sally against their wills all of the way to the Nevada line. Could the defendant then take Sally for his mixed personal and commercial purposes from state to state? The law is not that weak. Thus, we dispose of the point.

■ Defendant also complains that his counsel was forced to go to trial without adequate time to prepare. The record shows that the trial court suffered patiently from day to day while defendant held up starting the trial, "putting and taking" lawyers. Present counsel, appointed by the court, was his first and also his last. During the trial his counsel showed full familiarity with the facts and it was essentially a "fact case." No complaint was made at the trial that there had been no opportunity to bring witnesses. Counsel competently and splendidly represented the defendant, considering he didn't have much defense.

In conformity with current policy, this appeal (which only raises questions of fact and is without merit) has been brought here at high cost and at the expense of the taxpayers. This comment involves no criticism of counsel, who has discharged his duty in the best tradition of his profession.

Judgment affirmed.